## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| FAYE BOYKINS | ) | CASE NO. |
| 12305 Holborn Avenue | ) | |
| Cleveland, Ohio  44120 | ) | |
|     Plaintiff, | ) | JUDGE |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | COMPLAINT |
| CLEVELAND METROPOLITAN | ) | (Jury Demand Endorsed Herein) |
| SCHOOL DISTRICT | ) | |
| 1111 Superior Avenue E. | ) | |
| Suite 1800 | ) | |
| Cleveland, Ohio 44199 | ) | |
| | ) | |
|     Defendant. | ) | |

## PRELIMINARY STATEMENT

1. Plaintiff Faye Boykins brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the Age Discrimination in Employment Act 29 U.S.C. § 621 ("ADEA") and applicable state law against Defendant Cleveland Metropolitan School District ("Defendant" or "CMSD").

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction of this action under, without limitation, 28 U.S.C. § 1331 (federal question) as a civil action arising under Title VI and the ADEA. As well, this Court has supplemental jurisdiction of the state law claims raised hereunder, without limitation, 28 U.S.C. § 1367, as such claims relate to the federal claims that form a part of the same case.

2. Venue is proper in this district pursuant to, without limitation, 28 U.S.C. § 391(b) because Defendant employs Plaintiff in this District and because the events giving rise to the claims occurred in this District.

## PARTIES

3. Defendant CMSD operates schools in the City of Cleveland, Cuyahoga County Ohio and currently employs Plaintiff.

4. Plaintiff is an employee of Defendant, is age 62 and her race is African-American.

## FACTS

5. Defendant is an "employer" of Plaintiff within the meaning of Title VI and the ADEA.

6. Plaintiff is an "employee" of Defendant within the meaning of Title VI and the ADEA.

7. Plaintiff brings this action within 90 days by receiving her right to sue from the EEOC for filing a charge of discrimination against Defendant for race and age discrimination and retaliation.

8. Plaintiff is an English teacher employed by CMSD at the Jane Adams High School (or the "School").

9. Plaintiff is African-American and age 62.

10. On or about August 19, 2016, Plaintiff was appointed to the position of Senior Advisor and which appointment was confirmed at least three times. The Senior Advisor coordinates the Senior Class activities at the Jane Adams High School.

11. On or about October 11, 2016, Plaintiff was removed from her Senior Advisor position without notice or cause by her white Principal, Wanda Grondin, and replaced by a much younger, white employee that is a substitute teacher. Plaintiff was the only teacher in the Jane Adams High School removed from an awarded position. During Plaintiff's tenure, this position has never been held by a Black person. The CMSD previously had sent documentation stating that a substitute teacher could not serve in this position.

12. The time off for the Senior Advisor job is valued at approximately $2,500.00. This is the average pay for most comparable supplemental positions at the Jane Adams High School. Newspaper Advisor, Senior Yearbook Advisor and Resident Educator Mentor (as well as most other positions) pay similar salaries. Another position that pays in terms of time is the Student Council Advisor job.

13. After Plaintiff complained to Principal Grondin about being removed from the Senior Advisor job, Plaintiff was removed by Principal Grondin from every prestigious committee membership that she had and suffered other forms of discrimination as alleged herein. Plaintiff worked on various committees that govern and manage the daily operations of the Jane Adams High School and also sets policies and standards for the building. As the School Principal, Principal Grondin is the leader of every committee.

14. Plaintiff was a member of the initial committee for the CMSD when it first started processing the Teacher Development Education System/Student Learning Objectives ("TDES") system as an evaluative tool for teachers. At that time, only mentoring teachers that had successfully accomplished a series of tasks and were subsequently awarded the title of PEAC/PAR teachers were selected. It was through these efforts that Plaintiff built both title and prestige. Plaintiff was a member of the prestigious TDES team for a total of four to six years

until Principal Grondin removed her shortly after Plaintiff complained about her removal from the Senior Advisor job. The team helps evaluate every teacher's Student Learning Objectives ("SLO"). Plaintiff's own SLO submissions for her classes were thereafter rejected without any good reason or cause.

15. Plaintiff also was a member of the AAP (Academic Achievement Plan) team for 7 to 8 years. This prestigious team writes the document that determines and drives the school's academic goals and strategies. The team sets the standards for the school and establishes the means to accomplish them. They make financial decisions and disbursements. This is a paid position. Plaintiff attended an initial meeting and after that was told that she would be informed about the next meeting. After Plaintiff complained about her removal from the Senior Advisor position, Plaintiff was never informed about any more meetings, was never paid and after that, was voted off of the team. For this committee work, teachers are paid their instructor in-service rate of $41.98 per hour. This team usually meets approximately four or more times during the school year to perform the required tasks.

16. Plaintiff also was a member of the interview committee. Plaintiff had the prestigious job of helping to hire new teachers or other employees for the Jane Adams High School. Again, Plaintiff was removed from the team after Plaintiff complained about her removal from the Senior Advisor position. Plaintiff was the only teacher at the Jane Adams High School removed from every team that he/she had participated on previously. Plaintiff on information and belief is the only Master Teacher in the district that is not recognized as one.

17. For the last 8 years, Plaintiff was the "Newspaper Advisor" at Jane Adams High School. The purpose of this position is to advise and coordinate with students in Journalism Classes to publish a school newspaper. For the last several years, the School has not had

Journalism Classes, so Plaintiff wrote and published on her own time the School newspaper 4-10 times per year. Since Plaintiff complained about her removal from the Senior Advisor position, Principal Grondin has demanded that Plaintiff publish the school newspaper 12 times per year and refused to provide Plaintiff with time off or students to assist Plaintiff with this process. Plaintiff is supposed to be the Advisor, not the sole person responsible for the student newspaper. Plaintiff's salary and work hours are affected because she usually has to work an extra 10 to 14 hours or more a month to produce a newspaper. Also, although Plaintiff requested more printing paper in October, 2016 (after being removed from the Senior Advisor job) to publish the newspaper, Plaintiff has not received any paper to date. The Defendant's response has been that the paper has not come in yet. Plaintiff has absorbed the cost to continue printing a paper at her own expense because Plaintiff believes that this is another way Principal Grondin is trying to sabotage her.

18. Plaintiff is one of the small number of teachers that has a full schedule. Most teachers do not have a full schedule or they teach some kind of elective class that is not required for graduation. Some teachers have the benefit of being allowed to teach in a group. For example, four teachers may be in the classroom at the same time and they can do as they please. This opportunity was not offered to everyone including Plaintiff. Principal Grondin allowed teachers to create the master schedule for the faculty and staff. Plaintiff asked to be on the team, but was excluded. After the scheduling process, in September, 2016, Principal Grondin requested that Plaintiff accept an additional teaching assignment without pay. Principal Grondin also wanted Plaintiff to use time from the Senior Advisor job to teach this additional class. Plaintiff declined this offer when it became clear that Principal Grondin would not pay Plaintiff as required.

19. Principal Grondin has taken other actions against Plaintiff in an effort to sabotage her as a teacher and in an effort to cause her to retire. Plaintiff understands that students started a petition against Principal Grondin charging her with racism.

20. Plaintiff was informed that Principal Grondin had stated that Plaintiff is a problem and that there are too many older teachers. She has attacked Plaintiff's character at every opportunity with both parents and students. Plaintiff no longer has any prestige or even a title and has been marginalized by Defendant's conduct.

21. Plaintiff is now a non-entity whose steps are ordered and measured by others. Although Plaintiff has achieved a Master Teacher license, Plaintiff is given directives about the simplest matters such as how to keep a record of assignments. Plaintiff has been so humiliated and debased that students do not respect her. In some of Plaintiff's classes, students no longer consult Plaintiff or ask her permission to leave class. They consult Principal Grondin and she has consistently granted them permission without informing Plaintiff. Students have told Plaintiff that they received permission from Principal Grondin to attend other classes during their class time with Plaintiff. On other occasions, without informing Plaintiff, other teachers have retained the students in their classes and sent them to Plaintiff's class late. Both parents and students have been encouraged to complain about Plaintiff. Parents have been directed by Principal Grondin to contact the CMSD to complain about Plaintiff.

22. Principal Grondin sabotaged Plaintiff's mentoring position by not allowing her to leave the School to meet with her resident educator (teacher). As a result, the new teacher resigned and Plaintiff will not be paid which adversely affects her salary. This may also jeopardize Plaintiff's future opportunities for mentoring which again affects her salary, title and work hours.

23. As well, Plaintiff lost many other financial and academic growth opportunities this school year because Principal Grondin did not permit them. Plaintiff could not apply for the Master Teacher selection committee even though Plaintiff is a Master Teacher (licensed by the state) because Principal Grondin would be required to approve the application. Principal Grondin refused to allow Plaintiff to attend a professional development session about teen death and suicide sponsored by a large community provider. Plaintiff understands that the CMSD has the one of the highest rate in the state for teen deaths and suicide. These types of learning sessions are required for every teacher and particularly to achieve a higher TDES rating. Plaintiff worked on many extra projects like the one above to become a Master Teacher. More education and training increases a teacher's pay as well. There is still another ranking above Master Teacher that will be denied to Plaintiff due to Defendant's wrongful conduct.

24. This school year, Plaintiff was no longer allowed to escort students to the prestigious City Club events. Plaintiff had the special honor of being invited (with her students) to the events open to the City Club general membership as well as those specifically designed for schools only.

25. Plaintiff's work hours have increased exponentially. Plaintiff has to spend more time performing every duty that any teacher performs and more because Plaintiff is held to a different standard. Plaintiff is scrutinized excessively and receives more complaints from Principal Grondin than other younger and white teachers. Plaintiff is required to answer accusations, recommendations and directives more than any other teacher.

26. Due to the discrimination and retaliation directed at Plaintiff because of her race, and age and protected activity, Plaintiff was treated differently in the terms and conditions of her employment, actively sabotaged in order to engineer her resignation and suffered adverse

7

employment actions as alleged herein. Plaintiff was qualified for all the positions which she held, sought or was removed from. Defendant acted maliciously and/or with reckless disregard to the rights of Plaintiff.

27. As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT I
### (Age Discrimination ADEA)

28. Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

29. Defendant discriminated against Plaintiff on the basis of her age as alleged herein by removing her from the Senior Advisor position for which she was qualified and by replacing her with a substantially younger employee and by otherwise discriminating against her with respect to her compensation, terms, conditions, benefits and/or privileges of employment, because of her age.

30. Defendant further discriminated against Plaintiff on the basis of her age as alleged herein by treating her differently than younger, similarly situated individuals and by sabotaging her in an effort to force her to resign her employment with Defendant.

31. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

## COUNT II
### (Age Discrimination RC §§ 4112.02, R.C. 4112.14 and 4112.99)

32. Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

33. Defendant discriminated against Plaintiff on the basis of her age as alleged herein by removing her from the Senior Advisor position for which she was qualified and by replacing her with a substantially younger employee and by otherwise discriminating against her with respect to her compensation, terms, conditions, benefits and/or privileges of employment, because of her age.

34. Defendant further discriminated against Plaintiff on the basis of her age as alleged herein by treating her differently than younger, similarly situated individuals and by sabotaging her in an effort to force her to resign her employment with Defendant.

35. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

### COUNT III
### (Race Discrimination Title VII)

36. Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

37. Defendant discriminated against Plaintiff on the basis of her race as alleged herein by removing her from the Senior Advisor position for which she was qualified and by replacing her with a white employee less qualified and by otherwise discriminating against her with respect to her compensation, terms, conditions, benefits and/or privileges of employment, because of her race.

38. Defendant further discriminated against Plaintiff on the basis of her race as alleged herein by treating her differently than white, similarly situated individuals and by sabotaging her in an effort to force her to resign her employment with Defendant.

39. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

## COUNT IV
### (Race Discrimination RC §§ 4112.02 and 4112.99)

40. Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

41. Defendant discriminated against Plaintiff on the basis of her race as alleged herein by removing her from the Senior Advisor position for which she was qualified and by replacing her with a white employee less qualified and by otherwise discriminating against her with respect to her compensation, terms, conditions, benefits and/or privileges of employment, because of her race.

42. Defendant further discriminated against Plaintiff on the basis of her race as alleged herein by treating her differently than white, similarly situated individuals and by sabotaging her in an effort to force her to resign her employment with Defendant.

43. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

## COUNT V
### (Retaliation – RC § 4112.02 (J), RC § 4112.14, RC § 4112.99 and Common Law)

44. Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

45. Plaintiff engaged in protected activity by opposing unlawful age and race discrimination suffered by Plaintiff as alleged herein.

46. In retaliation for her protected activity, Defendant took wrongful actions against

Plaintiff as alleged herein including without limitation removing her from prestigious committees and positions, sabotaging Plaintiff and taking other actions against her in an effort to force her to resign, excluding Plaintiff from various terms and benefits of employment, among other things.

47. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

## COUNT VI

### (Retaliation – Title VII and ADEA)

48. Plaintiff hereby incorporates by reference the foregoing allegations as if fully rewritten.

49. Plaintiff engaged in protected activity by opposing unlawful age and race discrimination suffered by Plaintiff as alleged herein.

50. In retaliation for her protected activity, Defendant took wrongful actions against Plaintiff as alleged herein including without limitation removing her from prestigious committees and positions, sabotaging Plaintiff and taking other actions against her in an effort to force her to resign, and excluding Plaintiff from various terms and benefits of employment, among other things.

51. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendant for the following: such legal or equitable relief as may be appropriate including, without limitation, lost wages and compensation, back pay, front pay, compensatory damages, attorneys' fees and costs, punitive damages if applicable and for such other and further relief as is just under law or equity.

.

Respectfully submitted,

/s/ Daniel D. Domozick
Daniel D. Domozick (0025040)
33977 Chardon Road, Suite 100
Willoughby Hills, OH  44094
Phone: (216) 586-6020
Facsimile: (216) 586-6021
Email: ddomozick@domolaw.net
*Attorney for Plaintiff Faye Boykins*

## JURY DEMAND

Plaintiff demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury for all issues so triable.

/s/ Daniel D. Domozick
Daniel D. Domozick
Attorney for Plaintiff